UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA L. HOLMAN,

       Plaintiff,

v.                                      Case No. 1:04-CV-282
                                    Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

                                /

**REPORT AND RECOMMENDATION**

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

       Plaintiff was born on August 3, 1955 and completed the 8th grade (AR 52, 78).[1] Plaintiff stated that she became disabled on May 16, 2000 (AR 52). Plaintiff had previous employment as a nurse's aide, retail salesperson, optical salesperson and cashier (AR 81). She identified her disabling conditions as depression, shoulder surgery, and pain in the shoulder, which resulted in a weight lifting limitation of ten pounds and no lifting above her head (AR 72). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on February 5, 2004 (AR 13-28). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b) and 416.920(b)(2000)). Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)(2000)). Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Abbott*, 905 F.2d at 923.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since May 16, 2000 (AR 26). Second, the ALJ found that she suffered from severe impairments of right acromioclavicular arthrosis with a history of acrimioclavicular decompression and distal clavicle excision, degenerative disc disease of the cervical spine, major depressive disorder and panic disorder with agoraphobia (AR 26). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 27). The ALJ decided at the fourth step that plaintiff had the residual functional capacity ("RFC"):

> to perform the requirements of work activity except for lifting and/or carrying more than ten pounds occasionally and five pounds frequently; using the right upper extremity for activities which require fine manipulation or reaching above shoulder-level; using the right upper extremity for activities which require grasping more than occasionally; crawling; stooping, crouching, kneeling, or climbing ladders more than occasionally; working at unprotected heights or around moving machinery; working with exposure to temperature extremes or wet weather; maintaining attention/concentration to complete more than simple, routine, entry-level job tasks; and performing activities which produce high levels of stress (those involving decisions with regard to critical, emergent, or dangerous situations). No limitations with regard to sitting, standing, and walking are established.

(AR 27). In addition, plaintiff currently had a limited education (20 C.F.R. § 404.1564). The ALJ concluded that plaintiff was unable to perform her past relevant work (AR 21).

At the fifth step, the ALJ determined that plaintiff was capable of performing a range of light work (AR 27). Specifically, the ALJ found that an individual with plaintiff's limitations

could perform the approximately 13,000 jobs in Michigan, such as general clerk, general production worker, security guard and visual inspector (AR 26). The ALJ also found plaintiff's allegation of the total inability to perform sustained work activity because of her impairments to be not entirely credible (AR 27). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 27-28).

**III. ANALYSIS**

Plaintiff raises two issues on appeal.

> **A.** **There being objective medical substantiation for plaintiff's claimed limitations, the ALJ had no authority to reject those limitations.**
>
> **B.** **Even if the ALJ had been authorized to question plaintiff's claimed limitations, the reasons he gave for rejecting same were inadequate.**
>
> **1.** **Plaintiff's Credibility**

Plaintiff contends that the ALJ must accept her testimony regarding pain because the testimony is supported by medical evidence. Plaintiff's Brief at 12. Specifically, plaintiff states that she needs to support her arms on a surface (such as a desk) to use her hands, that she cannot write more than occasionally, and that she cannot look down more than 30 minutes at a time. Plaintiff's Brief at 15-16. Plaintiff also raises a general claim that she suffered from disabling pain in her shoulder, neck and hand. *Id.* at 13-15.

In this regard, plaintiff testified that she suffered from the following symptoms: constant pain in her right shoulder; swelling and numbness in her right hand; pain in the right elbow; inability to lift right arm overhead; a need to support her right hand to prevent numbness; inability to perform manipulative tasks with her right hand on "five days out of seven;" inability to use

vibrating tools on her right hand; the need to use a TENS machine for about 30 minutes twice a day; neck pain; limited ability to turn her head; the inability to look down and perform "bench-type" work; inability to use a computer keyboard or write for more than 30 minutes at a time; inability to take care of long hair; problems standing for more than five minutes at a time due to a lower back problem; inability to stand on her feet for an entire eight-hour shift; unable to sit for up for more than one hour; unable to lift a five pound weight with her right hand more than occasionally; the need to recline for 30 minutes to one hour twice a day; loss of interest in everything; trouble sleeping; problems concentrating; and panic attacks (AR 545-60).

The gist of plaintiffs claim is that the ALJ did not find her totally credible. It is the ALJ's function to resolve conflicts in the evidence and determine issues of credibility. *See Siterlet v. Secretary of Health and Human Servs.*, 823 F. 2d 918, 920 (6th Cir. 1987) (per curiam); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). An ALJ's credibility determinations are accorded deference and not lightly discarded. *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *Hardaway v. Secretary of Health and Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987). An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). *See also Tyra v. Secretary of Health and Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990) (ALJ may dismiss claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict).

As an initial matter, the ALJ took into account numerous restrictions in developing plaintiff's RFC. The limitations as set forth in the RFC indicate that the ALJ considered many, if

not most, of plaintiff's complaints to be credible. The ALJ severely restricted plaintiff's right upper extremity from work-related activities (plaintiff could not perform work-related activities "using the right upper extremity for activities which require fine manipulation or reaching above shoulder-level; using the right upper extremity for activities which require grasping more than occasionally") (AR 27). The ALJ restricted plaintiff to working conditions that could affect the use of her right hand ("working with exposure to temperature extremes or wet weather") and limited plaintiff to lifting 10 pounds occasionally and five pounds frequently (AR 27). In addition, the ALJ restricted plaintiff from "crawling; stooping, crouching, kneeling, or climbing ladders more than occasionally" (AR 27). Finally, the ALJ found that plaintiff suffered from various mental limitations, which exempted her from jobs that required "maintaining attention/concentration to complete more than simple, routine, entry-level job tasks; and performing activities which produce high levels of stress (those involving decisions with regard to critical, emergent, or dangerous situations)" (AR 27).

### a. Plaintiff's need to support her hands and occasional writing

These two claims are based upon the findings set forth in a functional capacity evaluation (FCE) prepared by an occupational therapist at Hackley Rehabilitation in April 2001 (AR 219-22). In this evaluation, the therapist states that plaintiff's:

> Fine motor dexterity is adequate for small object manipulation if stabilization of elbows on the work surface is available. Dexterity decreases significantly if she is required to use hands unsupported.

(AR 222). Plaintiff contends that the therapist's evaluation would have resulted in a finding of disability based upon the vocational expert's (VE's) testimony. Plaintiff's Brief at 15.

The ALJ summarized the therapist's evaluation as follows:

> The evaluation was performed on April 26, 2001 to determine the claimant's capacity to tolerate use of her right arm. She denied having any problems with walking, squatting, descending stairs, or sitting (if the chair had arm rests); she was observed to independently squat and recover, descend 20 steps without the use of handrails, and tolerate one hour of static and dynamic standing. Her capacities for standing, walking, crouching/squatting, and climbing stairs were considered unlimited, as was her capacity for sitting in a chair with arm supports. Based upon the evaluation, it was the opinion of the occupational therapist that the claimant was able to occasionally lift up to six pounds with her left hand and negligible weight with her right hand. While she was assessed to be unable to tolerate repetitive reaching or sustained use of her arms overhead, her fine motor dexterity was considered to be adequate for small object manipulation if her elbows could be supported on the work-surface (Exhibit 18f).
>
> * * *
>
> The undersigned is aware that the occupational therapist's report summary states that, based upon the claimant's lifting capabilities demonstrated within the evaluation, she was considered "able to tolerate the physical demands of sedentary work," yet the undersigned also notes that the occupational therapist found no limitations with regard to the claimant's capacities for standing and/or walking (Exhibit 18f) and, therefore, such capacities would not preclude a limited range of light work activity.

(AR 18, 24).[2]

The ALJ posed numerous hypothetical questions to the VE. In a hypothetical question which included restrictions consistent with the RFC determination, the VE testified that such an individual could perform 3,000 general clerk jobs, 3,000 general production worker jobs, 4,000 security guard jobs and 3,000 inspection jobs, for a total of 13,000 jobs (AR 26-27, 567-68). In response to additional hypothetical questions, the VE testified that if plaintiff had no functional

---

[2] The therapist's opinion can be considered as evidence from a non-medical source, although it is not entitled the weight given to the opinions of doctors. *See* 20 C.F.R. §§ 404.1513(e)(4), 416.913(e) (evidence from "other" non-medical sources includes information from therapists).

use of her right upper extremity, she could still perform 1,800 security guard and monitor jobs at the sedentary level and 1,500 information clerk jobs at the sedentary level (AR 567, 570, 572-73). The VE also testified that adopting the restrictions as set forth in the FCE, plaintiff could perform those 3,300 sedentary jobs (i.e., security guard and monitor and information clerk) (AR 576-77). The ALJ's RFC determination did not adopt all of the restrictions as set forth in the FCE (AR 27). Accordingly, he found that plaintiff could perform 13,000 jobs (AR 26-27).

Plaintiff contends that the ALJ should have adopted all of the limitations as set forth in the FCE and found her disabled. Plaintiff's Brief at 15. Assuming that the ALJ had restricted plaintiff to these 3,300 jobs, plaintiff contends that this number of jobs does not constitute a "significant number of jobs in the economy that accommodate the claimant's residual functional capacity" as required by step five of the sequential evaluation. *See Jones*, 336 F.3d at 474. I cannot necessarily agree with plaintiff's contention. In *Hall v. Bowen*, 837 F.2d 272 (6th Cir. 1988), the court addressed the issue of determining whether the jobs identified by the VE constituted a significant number of jobs in the economy. The court found that 1,350 to 1,800 jobs in Dayton area was significant number under the facts in that case, but failed to establish any particular number as "significant" for purposes of finding a claimant disabled:

> We are not blind, however, to the difficult task of enumerating exactly what constitutes a "significant number." We know that we cannot set forth one special number which is to be the boundary between a "significant number" and an insignificant number of jobs. The figure that the ALJ here found is not that magic number; the 1350 figure is to be viewed in the context of this case only. A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work,

9

>and so on. The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation.

*Hall*, 837 F.2d at 275.

In reaching its determination, the Sixth Circuit relied on the definition of disability in 42 U.S.C. § 423(d)(2)(A), which states in pertinent part that "'work which exists in the national economy' means work that exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.* at 274-75. The Sixth Circuit also looked to 20 C.F.R. § 404.1566(b), which provides in pertinent part:

>Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered "work which exists in the national economy". We will not deny you disability benefits on the basis of the existence of these kinds of jobs.

*Id.* at 275.

In the present case, the ALJ found that plaintiff could perform approximately 13,000 light and sedentary jobs in the regional economy. Although plaintiff's counsel elicited testimony from the VE that the restrictions set forth in the FCE would result in only 3,300 sedentary jobs, counsel did not develop a record to support her contention that this was not a significant number of jobs to support a finding of disability. There is no evidence in the record indicating that these 3,300 jobs were so isolated or so geographically limited as to be insignificant, or that plaintiff was not capable of traveling to engage in the assigned work. *See Hall*, 837 F.2d at 275. In short, plaintiff's argument that she is disabled as a matter of law because the 3,300 identified jobs are not a significant number of jobs under the regulations is not persuasive.

Plaintiff relies on the decision in *Brown v. Secretary of Health and Human Servs.*, No. G 85-958 (W.D. Mich. July 21, 1989), in which this court found that 3,000 jobs in the State of Michigan did not constitute a significant number of jobs. Plaintiff's Brief at 15-16. However, as the court previously discussed, the Sixth Circuit has rejected the notion that there is a "magic number" of jobs that must exist in a state or region to support a finding of disability. *See Hall*, 837 F.2d at 275.[3] In addition, the court's decision in *Brown* is distinguishable from the present case. In *Brown*, the record contained evidence that plaintiff's particular factual situation (e.g., a limited ability to drive 9 miles and a limited ability to drive only 3 or 4 days a week), would eliminate the jobs outside of the immediate radius of her home. In the present case, plaintiff did not develop a record with respect to her inability to commute to work or address the issue of geographic limitation.

Furthermore, the court in *Brown* assumed that the jobs were scattered proportionately throughout the 83 counties State of Michigan, with the greatest number of jobs in the more populous Southeast Michigan and only a small fraction of the jobs available to plaintiff in West Michigan. The undersigned is not in a position to make such an assumption in this case. The Sixth Circuit has rejected the use of a percentage analysis in determining the existence of a significant number of jobs. "[W]hen there is testimony that a significant number of jobs exists for which a claimant is qualified, it is immaterial that this number is a small percentage of the total number of jobs in a given area." *Hall*, 837 F.2d at 275. "The fact that the statute [42 U.S.C. § 423(d)(2)(A)] speaks in terms of work

---

[3] While there is no "magic number," other courts have determined that less than 3,300 jobs in the regional economy, defined by the VE as the State of Michigan (AR 539), constitutes a "significant number" of jobs. *See, e.g., Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (200 jobs in State of Iowa); *Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993) (1,400 jobs in the greater Milwaukee metropolitan area); *Trimiar v. Sullivan*, 966 F.2d 1326, 1330-32 (10th Cir. 1992) (850 to 1100 jobs in the state of Oklahoma); *Hall*, 837 F.2d at 275 (1,350 to 1,800 jobs in the nine-county area including Dayton, Ohio). *See also*, *Wright v. Massanari,* 321 F.3d 611(6th Cir. 2003), in which the court found that 3,900 jobs in the State of Tennessee to be a significant number.

existing in the national economy and does not restrict the [Commissioner] to consideration of work that exists in the immediate area of a claimant's residence gives the [Commissioner] sufficient latitude to treat an entire state as the region to be considered." *Pollice v. Secretary of Health and Human Services*, No. 87-1609, 1988 WL 28536 (6th Cir. April 1, 1988). *See generally,* 42 U.S.C. § 423(d)(2)(A) (a person shall be determined to be under a disability only if he cannot "engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives"); 20 C.F.R. § 404.1566(a)(1) ("We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether . . . [w]ork exists in the immediate area in which you live").

### b. Plaintiff's testimony that she cannot look down more than 30 minutes

Next, plaintiff contends that if the ALJ had accepted her testimony that she cannot look down more than 30 minutes at a time, then he would have had to find her disabled, because this limitation was not included in a hypothetical question posed to the VE. Plaintiff's Brief at 16. Plaintiff's contention is pure speculation; the court does not know how this additional limitation would have affected the VE's testimony.[4]

---

[4] If the court made such a finding, then an appropriate remedy could be a remand to pose an appropriate hypothetical question to the VE, not an award of benefits.

The real issue before the court is whether the ALJ should have included this limitation in the hypothetical questions posed to the VE. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Plaintiff testified that looking down to use a computer is difficult and she can only perform keyboarding at a computer for about 30 minutes at a time (AR 550-52). The ALJ did not include this restriction in either the RFC or the hypothetical questions posed to the VE. The ALJ observed that plaintff's x-ray of her right shoulder in August 2001 was unremarkable and that the results of EMG studies of both of her upper extremities in January 2002 were normal (AR 23). While an MRI of plaintiff's cervical spine in July 2002 revealed spondylosis and a right-sided disc herniation, plaintiff did not return, as requested, to discuss recommended surgery with the doctor (AR 23). This led the ALJ to conclude that plaintiff did not consider her neck pain unmanageable, despite the fact that it is aggravated by looking up and down (AR 23). In addition, the occupational therapist noted that plaintiff was "able to tolerate the physical demands of sedentary work" (AR 24, 222). Furthermore, neither plaintiff's orthopedic surgeon, Robert Schneeberger, D.O. (AR 287) nor

her family physician, Kevin Kiley, M.D. (AR 510) found plaintiff to be restricted with respect to this type of work. Accordingly, the ALJ could properly reject this claim.

### 2. Pain

The balance of plaintiff's claim is that the ALJ did not properly evaluate her allegation of disabling pain. An ALJ's evaluation of a claimant's pain is admittedly inexact. *Jones v. Secretary of Health and Human Servs.*, 945 F.2d 1365 (6th Cir. 1991). As the Sixth Circuit noted in *Jones*:

> The measure of an individual's pain cannot be easily reduced to a matter of neat calculations. There are no x-rays that can be taken that would objectively show the precise level of agony that an individual is experiencing. Hence, in evaluating the intensity and persistence of pain, both physicians and laymen alike, must often engage in guesswork.

*Id.* at 1369. Despite the inexact nature of measuring a claimant's pain, the ALJ must nevertheless evaluate the alleged pain and determine whether the claimant suffers from disabling pain.

While it is well-settled that pain may be so severe that it constitutes a disability, a disability cannot be established by subjective complaints of pain alone. "An individual's statement as to pain or other symptoms shall not *alone* be conclusive evidence of disability." *Cohen v. Secretary of Department of Health and Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992), quoting 42 U.S.C. § 423(d)(5)(A) (emphasis added). Rather, objective medical evidence that confirms the existence of pain is required. *Shavers v. Secretary of Health and Human Services*, 839 F.2d 232, 234-235 (6th Cir.1987). In *Duncan v. Secretary of Health and Human Servs.*, 801 F.2d 847 (6th Cir. 1986), the Sixth Circuit fashioned a two-prong test for evaluating an alleged disability based upon pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1037-1039 (6th Cir. 1994) (the *Duncan* analysis is

a "succinct form" of the Social Security Administration's guidelines for use in analyzing a claimant's subjective complaints of pain as set forth in 20 C.F.R. § 404.1529).

To meet the first prong of the *Duncan* test, the claimant must present objective evidence of an underlying medical condition. *Duncan*, 801 F.2d 847 at 853. In order for a claimant to meet the second prong of the *Duncan* test "(1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain." *Id.*

### First prong of the *Duncan* test

The ALJ found that plaintiff suffered from severe impairments of right acromioclavicular arthrosis with a history of acrimioclavicular decompression and distal clavicle excision, degenerative disc disease of the cervical spine, major depressive disorder and panic disorder with agoraphobia (AR 26). Plaintiff has presented objective evidence of an underlying medical condition. Accordingly, she has satisfied the first prong of the *Duncan* test.

### Second prong of the *Duncan* test

With respect to the first part of the second prong of the *Duncan* test, plaintiff must demonstrate that the objective medical evidence confirms the severity of her pain. A claimant's self-reports of pain do not constitute objective medical evidence. *See McGuire v. Commissioner*, No. 98-1502, 1999 WL 196508 at * 7 (6th Cir. March 25, 1999 ), *citing Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990). Reliable indicators of intense pain include muscle atrophy, reduced range of motion, muscle spasms, and motor disruption. *Jones*, 945 F.2d at 1370. Plaintiff's record does not demonstrate a consistent history of these reliable indicators. In

May 2000, Emmanuel Obianwu, M.D., found some limitation of motion but no atrophy or spasm (AR 198-99). In April 2001, Dr. Stephens found plaintiff to have good range of motion with no mention of spasm, atrophy or motor disruption (AR 231). In May 2001, Dr. VandenBosch found that plaintiff's right shoulder range of motion was moderately restricted, that she had tenderness and spasm over the right-sided trapezius and suprascapular musculature (AR 229). Then, in June 2001, Dr. Kiley found that plaintiff had full range of motion in her shoulder and no motion deficits (AR 324). While plaintiff has shown periodic signs of some of the reliable indicators of intense pain, she has not consistently demonstrated these indicators.

        The ALJ may also consider plaintiff's household and social activities in evaluating complaints of pain. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). Here, the ALJ observed that plaintiff engaged in many daily activities: attends classes two days per week to finish her high school education, prepares meals, watches television, performs household chores (loading and unloading a dishwasher, dusting furniture, vacuuming carpet for five minutes at a time), drives when needed, shops, launders clothes, visits with relatives, watches her grandchildren two or three times a week, attends church services weekly, goes out to eat occasionally, tends to the payment of household financial matters and attends to most of her personal needs (AR 16, 89-105, 107-08, 110-21). While plaintiff's testimony suggests that she is incapable of performing work-related activities, she is able to participate in a number of daily activities which, as noted, the ALJ may consider.

        The severity of plaintiff's pain may also be measured by the medications necessary to alleviate the pain. Mild medication and infrequent doses tend to show claimant does not have disabling pain. *See Blacha*, 927 F.2d at 231; *Kimbrough v. Secretary of Health and Human Servs.*,

801 F.2d 794, 797 (6th Cir. 1986).   Here, the record is inconsistent with respect to plaintiff's use of prescription medication. Dr. Kiley noted that plaintiff refused certain pain treatment such as a nerve block (AR 324). Plaintiff has refused to take some pain medication (e.g., Neurontin or Vioxx), reporting to Melissa Stephens, M.D. that she had a "phobia" and "marked difficulty" in taking medication (AR 233). At her hearing, plaintiff stated that she used only over the counter medications such as Tylenol and Advil (AR 549). The use of over the counter pain medication, and refusal to use more potent pain treatments, is not consistent with a person suffering from disabling pain.  In addition, plaintiff contradicted this testimony in her Disability Report when she listed prescription medication including Zoloft (for depression), Darvocet (for pain) and Claritan (for itching) (AR 77). Plaintiff's use of these medications is inconsistent with her claim that she has a "phobia" about taking medication and that she treats pain with Tylenol and Advil.  Furthermore, Darvocet is prescribed for the management of mild to moderate pain. Physician's Desk Reference at 1444 (52nd ed. 1998).  The use of this medication does not suggest that plaintiff suffered from disabling pain.

The court also notes that an MRI from July 2002 indicated that plaintiff had a disc-herniation at C6-7 (AR 410).  Plaintiff's physician, Richard Moulton, M.D., met with plaintiff on August 20, 2002 and advised her that she could benefit from surgery (AR 465).  Plaintiff, however, cancelled and rescheduled appointments until meeting with the doctor in January 2003 (AR 464). Then, plaintiff failed to show up for an appointment in February 2003 to discuss surgical options and also failed to show up for an appointment in August 2003 (AR 464).  Plaintiff's failure to follow up with the surgeon and continue treatment suggests that her condition did not cause disabling pain.

Finally, plaintiff fails to meet the second part of the second prong of the *Duncan* test because she provides no objective medical evidence indicating that her condition "is of a severity

17

which can reasonably be expected to give rise to the alleged pain." *Duncan*, 801 F.2d at 853. In April 2001, plaintiff's physician advised her that the pain would in all likelihood improve if she could take an anti-inflammatory medication (AR 233). Plaintiff's physicians have not restricted her from participating in all work-related activity. For example, the ALJ adopted Dr. Kiley's sworn statement, which indicates a capacity for plaintiff to use her right upper extremity on an occasional basis (AR 25). In January 2002, Plaintiff had a normal EMG study of both upper limbs (AR 294). This evidence suggests that plaintiff did not suffer from the type of severe condition that could be expected to give rise to disabling pain.

The court's analysis does not suggest that plaintiff does not suffer from pain. Rather, the evidence indicates only that plaintiff's pain was not disabling under the *Duncan* standard. Even if this court might reach a different conclusion considering the evidence *de novo,* there is no basis on this limited appellate review to disturb the ALJ's decision.

### IV. Recommendation

I respectfully recommend that the Commissioner's decision be affirmed.

Dated: July 12, 2005         /s/ Hugh W. Brenneman, Jr.
                             Hugh W. Brenneman, Jr.
                             United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).