UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LINDA L. HOLMAN,

        Plaintiff,

                                                            Case No. 1:04-CV-282
v.                                                    Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

### ORDER ADOPTING REPORT AND RECOMMENDATION

The Court has before it Plaintiff's objections to the Magistrate Judge's Report and Recommendation issued on July 12, 2005, in which the magistrate judge recommended that the Commissioner's decision denying Plaintiff's claim for disability insurance benefits be affirmed pursuant to 42 U.S.C. § 405(g). The magistrate judge concluded that the ALJ's determination that Plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy was supported by substantial evidence. After conducting a *de novo* review of the report and recommendation, the Court will adopt the magistrate judge's report and recommendation and affirm the Commissioner's decision denying benefits to Plaintiff.

Plaintiff first argues that the magistrate judge erred in not rejecting the ALJ's conclusion that Plaintiff was not disabled on account of the pain she claims she suffered. Plaintiff testified that she experiences pain in her shoulder at rest, and, consequently, is unable to perform any jobs in the economy. Therefore, she concludes, she is disabled as defined in the Social Security Act. In

considering Plaintiff's allegation of pain, the magistrate applied the test articulated in *Duncan v. Secretary of Health and Human Services.,* 801 F.2d 847, 853 (6th Cir. 1986), which is a two-prong test for evaluating an alleged disability based upon pain. To meet the first prong, the claimant must present objective evidence of an underlying medical condition. *Id.* To meet the second prong there must be either (1) "objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) the objectively determined medical condition must be of a severity which can be reasonably expected to give rise to the alleged pain." *Id.* Plaintiff has presented sufficient evidence of an underlying medical condition. The magistrate found, however, that Plaintiff failed to meet the second prong of the test.

Plaintiff asserts that requiring her to demonstrate that "objective medical evidence confirms the severity of her alleged pain" (the first part of the second prong of the *Duncan* test) is inconsistent with the Social Security Administration regulation that provides that "[the Commissioner] will not reject [the claimant's] statements about the intensity and persistence of your pain . . . or about the effect your symptoms have on your ability to work *solely* because the available objective medical evidence does not substantiate your statements."[1]  20 C.F.R. § 404.1529(c)(2) (emphasis added). This regulation is not inconsistent with the first part of the second prong of the *Duncan* test. If objective medical evidence confirms the severity of a claimant's pain, then the claimant will be found disabled. This regulation provides that the lack of objective medical evidence confirming the severity of the claimant's alleged pain will not by itself demonstrate that the claimant is not disabled.

---

[1] Plaintiff claims that the magistrate erred in following *Duncan*, a case decided in 1986, because 20 C.F.R. § 404.1529, the controlling regulation, was amended in 1991. The Sixth Circuit has held, however, that the amendments in 1991 "in no way made [20 C.F.R. § 404.1529] inconsistent with [the *Duncan* test]." *McCoy v. Charter*, 81 F.3d 44, 47 (6th Cir. 1995). *See Felisky v. Bowen*, 35 F.3d 1027, 1037-39 (6th Cir. 1994) (the *Duncan* analysis is a "succinct form" of the Social Security Administration's guidelines for use in analyzing a claimant's subjective complaints of pain as set forth in 20 C.F.R. § 404.1529).

Nonetheless, the lack of objective medical evidence confirming the severity or intensity of a claimant's pain is relevant in determining whether the claimant is disabled.  20 C.F.R. § 404.1529(c)(1)-(2).  As the magistrate correctly noted, reliable objective indicators of intense pain include muscle atrophy, reduced range of motion, muscle spasms, and motor disruption.  The Court agrees with the magistrate's conclusion that "[w]hile [P]laintiff has shown periodic signs of some of the reliable indicators of intense pain, she has not consistently demonstrated these indicators."

The regulations provide that "[s]ince symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," the commissioner will consider other information about a claimant's symptoms, such as what medications the claimant takes to alleviate the pain and how the symptoms affect the claimant's pattern of daily living.  20 C.F.R. § 404.1529(c)(3).  Mild medication and infrequent doses tend to show that the claimant does not have disabling pain.  *Kimbrough v. Secretary of Health and Human Servs.,* 801 F.2d 794, 797 (6th Cir. 1986).  Plaintiff refused to take some pain medications (e.g. Neurontin or Vioxx), claiming that she had a "phobia" of taking medication.  Plaintiff testified that she only used over the counter medications such as Tylenol and Advil.  In her objection to the magistrate's report and recommendation, Plaintiff argues that she has a "phobia" of taking only prescription medications, not over the counter medications.  The magistrate judge noted that in Plaintiff's Disability Report, she listed taking prescription medications including Zoloft (for depression) and Darvocet (for pain).  Plaintiff's use of these medications is inconsistent with her claim that she has a "phobia" for prescription medications, and her use of only Tylenol and Advil is inconsistent with her claim that she is suffering from disabling pain.  Moreover, the magistrate noted that the ALJ found that Plaintiff performed a wide-range of household activities, such as preparing meals, loading and unloading the

dishwasher, vacuuming, shopping, and laundering clothes, which further supports a finding that Plaintiff does not suffer from disabling pain.

The magistrate also correctly concluded that Plaintiff provided no objective medical evidence indicating that her condition "is of a severity which can reasonably be expected to give rise to the alleged [disabling] pain." *Duncan*, 802 F.2d at 853. Plaintiff's physicians have not restricted her from all work-related activities on account of her alleged pain. The ALJ adopted Dr. Kiley's sworn statement that Plaintiff has a capacity to use her right upper extremity on an occasional basis. In conclusion, the magistrate was correct in finding that the evidence suggests that Plaintiff's pain was not disabling under the *Duncan* standard.

Plaintiff next argues that even if her pain were not found to be disabling, such that jobs did exist in the economy that she could perform, the limited number of jobs that she could perform do not constitute a "significant number of jobs in the economy." Therefore, she concludes, she must nonetheless be found disabled as defined in the Social Security Act. After determining Plaintiff's residual functional capacity, the ALJ found that Plaintiff could perform 13,000 jobs in Michigan. Plaintiff asserts that the ALJ erred in not adopting the limitations set forth in an occupational therapist's functional capacity evaluation (FCE). The VE testified that adopting the restrictions set forth in the FCE, Plaintiff could perform 3,300 jobs in Michigan. Relying upon *Brown v. Secretary of Health and Human Services*, No. G85-958, 1989 WL 433171 (W.D. Mich. July 21, 1989), Plaintiff maintains that 3,300 jobs in the State of Michigan is not a "significant number of jobs in the economy that accommodate the claimant's residual functional capacity" as required by the Act. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). In *Brown*, the plaintiff was found able to perform 3,000 jobs in the Michigan economy. *Brown*, at *2. The district court

noted that the record did not indicate where in Michigan the 3,000 jobs were located. *Id*. The court assumed that the jobs would be scattered proportionally throughout the State based upon population, which would place most of the jobs in southeast Michigan. The plaintiff, however, lived in the Muskegon area, which is in west Michigan. *Id*. The court further noted that plaintiff's condition limited her "to driving only short distances of approximately 9 miles, 3 to 4 times per week." *Id.* "This limited driving capacity," the court noted, "would eliminate all of the jobs outside of the immediate radius of plaintiff's home. Thus, the amount of jobs available to plaintiff by any reasonable calculation," the court opined, "would be only a small fraction of the 3,000 jobs scattered throughout the State." *Id.* The court concluded that this limited number of jobs did not constitute a significant number of jobs in the economy that accommodated the plaintiff's residual functional capacity. *Id*.

*Brown* is readily distinguishable from the present case. Unlike *Brown*, where the record contained evidence that the plaintiff's limited driving ability eliminated the jobs outside the immediate radius of her home, Plaintiff here did not develop a record with respect to her inability to commute to work. Moreover, "[t]he fact that the statute [42 U.S.C. § 423(d)(2)(A)] speaks in terms of work existing in the national economy and does not restrict the [Commissioner] to consideration of work that exists in the immediate area of a claimant's residence gives the [Commissioner] sufficient latitude to treat an entire state as the region to be considered." *Pollice v. Secretary of Health and Human Services*, No. 87-1609, 1998 WL 28536 (6th Cir. April 1, 1988); 20 C.F.R. § 404.1566(a)(1) ("We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether . . .[w]ork exists in the immediate area in which you live."). Even if the

5

ALJ were required to accept the restrictions set forth in the FCE, such that Plaintiff was limited to performing 3,300 jobs in the State of Michigan rather than 13,000, 3,300 jobs still constitutes a significant number of jobs available in the economy that accommodate Plaintiff's residual functional limitations. *See Wright v. Massanari*, 321 F.3d 611 (6th Cir. 2003) (finding 3,900 jobs in the State of Tennessee to be a significant number); *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (1,350 to 1,800 jobs in a nine-county area including Dayton, Ohio); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (200 jobs in state of Iowa); *Trimar v. Sullivan*, 966 F.2d 1326, 1330-32 (10th Cir. 1992) (850 to 1100 jobs in the state of Oklahoma). Therefore,

**IT IS HEREBY ORDERED** that the Magistrate Judge's Report and Recommendation issued July 12, 2005, (docket no. 9), is **APPROVED AND ADOPTED** as the Opinion of this Court, and the decision of the Commissioner denying benefits to Plaintiff is **AFFIRMED**.

The case is **concluded**.


Dated:  December 9, 2005                    /s/ Gordon J. Quist
                                        GORDON J. QUIST
                                     UNITED STATES DISTRICT JUDGE